UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | NO. 2:17CR7-PPS |
| v. ) | and |
| ) | NO. 2:19CR76-PPS |
| JUVAN J. BROWN, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Juvan J. Brown was prosecuted on drug charges in two separate cases before this court. In Case No. 2:17CR7-PPS, Brown was charged with heroin distribution. In Case No. 2:19CR76-PPS, he was charged with possession with intent to distribute both crack and heroin. The cases were consolidated for sentencing after Brown entered pleas of guilty ins both. On November 15, 2019, I sentenced Brown to an aggregate prison term of 108 mos. Brown is currently serving his sentence at the federal prison in Glenville, West Virginia known as FCI Gilmer. According to the Federal Bureau of Prisons' website, Brown's projected release date is November 12, 2025, which indicates that Brown is just about at the mid-point of serving his prison sentence.

Now before me is Brown's Emergency Motion for Compassionate Release. [DE 54.][1] Brown seeks an early release from prison based on the risks of the COVID-19 pandemic. The request is made under 18 U.S.C. §3582(c)(1)(A)(i), which, as amended by

---

[1] Cites to the record are to ECF docket entries as they appear in Case No. 2:17CR7-PPS. All briefing of the motion has been filed and docketed in both cases.

Section 603 of the First Step Act, authorizes a defendant to seek a modification of an imposed term of imprisonment upon a showing that "extraordinary and compelling reasons warrant such a reduction."

The first issue in these types of matters is administrative exhaustion. Before coming to court, a person seeking compassionate release must first request that relief from the warden of his institution. The statute requires a defendant to "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf." §3582(c)(1)(A). Brown represents that around October 1, 2020, he sent a compassionate release request to his prison's warden, who never responded. [DE 54 at 5.] The government reports that it contacted the Bureau of Prisons and "was informed that there is no record of a Reduction in Sentence Request or Home confinement request from Mr. Brown." [DE 56 at 4.] Both parties' contentions are made by way of unsworn statements. This would appear to leave the matter at a draw, except, as the government points out, Brown bears the burden of proving his satisfaction of the exhaustion requirement, and has offered no evidence in support of his claims on the subject. [*Id.*] Although Brown's failure to establish that he has met the exhaustion requirement supports denial of his motion, I find that consideration of the merits of his motion also warrants its denial.

After the exhaustion issue, §3582(c)(1)(A) next requires a determination whether the defendant presents "extraordinary and compelling reasons" that warrant a reduction of the sentence previously imposed, and thereafter, if necessary, consideration of the

2

sentencing factors set forth in §3553(a).  Brown offers several arguments in support of his request for compassionate release.  He cites the number of educational courses he has completed while incarcerated, and his lack of disciplinary issues.  [DE 54 at 2.] All of this is commendable, of course, but does not qualify as extraordinary or compelling, either alone or considered in combination with the other circumstances Brown relies upon.

Brown contends that his compromised health supports compassionate release. Brown underwent an emergency surgery in August 2020 for a number of abdominal conditions, which has left him with a colostomy bag and, he claims, "in an end of life situation."  [*Id*. at 3.]  The government has filed prison medical records that reflect health services provided to Brown, and do not support Brown's drastic "death's door" characterization of his condition.  Following a hospital stay in which a "temporary colostomy" was performed in August, the record after Brown was returned to the prison indicates that conditions of acute tubulo-interstitial nephritis, diverticulitis of the intestine, an intestinal fistula, hypokalemia and a urinary tract infection all were "resolved."  [DE 58-1 at 14.]  The notes of that same prison medical visit on August 27, 2020 indicate that orders were placed for follow-up labs and an offsite follow-up surgical visit in one week, Tylenol #3 was ordered for pain, Brown was provided a walker for a week for ambulation and encouraged to walk to decrease complication risks, and that an order would be placed for Brown's use of a lower bunk for the next 8 weeks.  [*Id*.]  Daily wound care by nursing staff was ordered for the next 3 days, after

3

which Brown could clean with soap and water and reapply the dressing until his surgical follow-up. [*Id*.] Brown was told to "notify staff if he develops nausea/vomiting, increased abdominal pain, fever/chills or frank blood in his colostomy appliance." [*Id*.]

The records further show that Brown had an offsite surgical follow-up appointment on September 15, from which he returned with no major complaints of pain. [DE 58-1 at 9.] Brown did not appear for a "scheduled call out in health services" on September 28. [*Id*. at 6.] Brown had a medical visit on November 17, 2020, during which he was reported to be doing well with the colostomy and "is expecting to have a reversal 'any day now.'" [DE 58-1 at 2.] The records contain a "target date" of November 30, 2020 for a colostomy reversal surgery, but also reflect the doctor's submission of a reversal consult that day. [*Id*. at 3, 4.] Also relating to the colostomy, the November 17 record reflects Brown's need for adhesive remover and skin protectant, both of which are noted to be sent over that day. [*Id*. at 2, 4.]

None of this evidence supports Brown's claims of inadequate medical care or of especial vulnerability to COVID-19 or complications from it if infected. "To be faithful to the statutory language requiring 'extraordinary and compelling reasons,' it is not enough that Defendant suffers from...chronic conditions that [he] is not expected to recover from. Chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, No. 1:16-CR-00130-DAD, 2020 WL 704785, at *2-3 (E.D.Cal. Feb. 12, 2020), quoting *US v. Weidenhamer*, No. CR-16-01072-

4

001-PHX-ROS, 2019 WL 6050264, at *5 (D. Ariz. Nov. 8, 2019). It appears that there are plans to reverse Brown's colostomy, so that it may not even represent a chronic condition.

Even so, the management of Brown's medical situation has not been demonstrated to be unreasonable or to have created unusual risks for Brown with respect to COVID-19. According to the Crohn's & Colitis Foundation, "It's important to understand that having an osotomy, or not having a colon or rectum, does **not** negatively affect your immune system, nor does it increase your risk for getting COVID-19. " https://www.crohns-colitisfoundation.org/coronavirus/ostomies-j-pouches (accessed 4/14/2021) (emphasis in original). In addition, Brown was administered the first dose of Pfizer COVID-19 vaccine on March 2, 2021. [DE 58-2 at 1.] He has therefore received a significant measure of protection against COVID-19, and has failed to demonstrate that he is at a level of risk that can be characterized as extraordinary or compelling.

Brown makes anecdotal assertions about the rampant spread of COVID-19 at FCI Gilmer. [DE 54 at 3-4.] These are not repeated in his reply memorandum. [DE 60.] The government cites the BOP's website reporting that FCI Gilmer has had 289 inmates and 62 staff members recover from COVID infection, and at present has only 12 positive inmates and 5 positive staff. [DE 56 at 15, citing https://www.bop.gov/coronavirus/ (as of March 8, 2021)]. No specialized knowledge of epidemiology is required to understand that the management of a highly infectious disease with an incubation period of up to 14 days and the possibility of entirely asymptomatic carriers poses an enormous

5

challenge for the Bureau of Prisons. Prison facilities are not designed for social distancing and the BOP's ability to control inmate behavior so as to reduce transmission is extremely limited. Based only on the allegations Brown has made and in view of the data the government cites, I cannot determine that the prison's handling of the COVID-19 outbreak has been or is unreasonably poor or exposes Brown to extraordinary risk, particularly now that he has received a dose of the Pfizer vaccine.

The COVID-19 pandemic is a scourge that has imposed great hardship and suffering on millions of people across the world. But it does not warrant the wholesale emptying of all prisons and jails. The special authority granted to sentencing judges by the recent amendment to §3582(c)(1)(A) is quite narrow, and understandably so, because it comes at the cost of truncating the carefully measured term of imprisonment previously imposed, at the expense of all the sentencing factors and goals weighed in determining that sentence. There are many facts and factors about the COVID-19 pandemic that can justly be called "extraordinary and compelling." But the risk of infection, or even an actual infection with the virus, is not necessarily enough to meet that standard given the prevalence of the coronavirus generally at this time. The risks Juvan Brown now faces with respect to COVID-19 are not shown to present "extraordinary and compelling reasons" warranting a reduction in his sentence.

ACCORDINGLY:

Defendant Juvan J. Brown's Emergency Motion for Compassionate Release [DE 54 in No. 2:17CR7; DE 19 in No. 2:19CR76] is DENIED.

SO ORDERED.

ENTERED: April 14, 2021.

/s/ Philip P. Simon<br>
PHILIP P. SIMON, JUDGE<br>
UNITED STATES DISTRICT COURT